The **MEDICAL SOCIETY OF the STATE OF NEW YORK, a New York not-for-profit Corporation, Morton M. Koff, M.D., Milton Rosenberg, M.D., Jane Doe and Raymond Ortega, Plaintiffs-Appellees,**

v.

**Philip TOIA, as Commissioner of Social Services of the State of New York, and Robert P. Whalen, M.D., as Commissioner of Health of the State of New York, Defendants-Appellants.**

No. 1138, Docket 77–7097.

United States Court of Appeals, Second Circuit.

Argued April 25, 1977.

Decided Aug. 8, 1977.

---

David L. Birch, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of N.Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for defendants-appellants.

Charles P. Sifton, New York City (LeBoeuf, Lamb, Leiby & MacRae, Richard C. Cole, New York City, of counsel), for plaintiffs-appellees.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and NEAHER, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from an order of the United States District Court for the Eastern District of New York preliminarily enjoining the implementation of subdivision 5(a), (b), (c) and (e) of § 365–a of the New York Social Services Law (McKinney Supp. 1976–77), which became effective on July 27, 1976.[1] Because the District Court made its determination solely on the basis of pleadings, affidavits and depositions, the scope of our review is not limited by the abuse of discretion test, applied generally where witness credibility is one of the determinative factors. *Diversified Mortgage Investors v. U.S. Life Title Insurance Co.,* 544 F.2d 571, 577 (2d Cir. 1976); *San Filippo v. United Brotherhood of Carpenters & Joiners,* 525 F.2d 508, 511 (2d Cir. 1975). Our examination of the record, unfettered by the abuse of discretion rule, convinces us that it does not warrant the interim relief which was granted.

New York, as a participant in the Medicaid program of the Social Security Act, 42 U.S.C. § 1396 *et seq.,* is required to assure that payments for medical services made thereunder are neither unnecessary nor excessive. *National Union of Hospital & Health Care Employees v. Carey,* 557 F.2d 278, 279 (2d Cir. 1977), *Klein v. Nassau County Medical Center,* 347 F.Supp. 496, 499 (E.D.N.Y.1972), *vacated and remanded on other grounds,* 412 U.S. 925, 93 S.Ct. 2747, 37 L.Ed.2d 152 (1973). Troubled by reports that over two million unnecessary surgeries were performed in the United States in 1974 and by statistics which indicated that Medicaid patients have two and one-half times more surgery than the general population, the State decided to formulate more restrictive guidelines and controls for authorized surgical procedures. Subdivision 5 of § 365–a resulted from this decision.[2] By this subdivision, the State has attempted to limit authorized surgery to that which is urgently necessary or which, if delayed, might cause an increased medical risk, jeopardize life or essential function, or cause severe pain. The annual savings which the State hoped to effectuate thereby have been estimated as high as sixty-five million dollars.

Not unexpectedly, litigation followed promptly upon the enactment of the statute. The plaintiffs, Jane Doe and Raymond Ortega, contended that it deprived them of the right to reimbursable surgery properly

---

* Of the Eastern District of New York, sitting by designation.

1. 5. (a) Medical assistance shall include surgical benefits for emergency or urgent surgery for the alleviation of severe pain, for immediate diagnosis or treatment of conditions which threaten disability or death if not promptly diagnosed or treated.

   (b) Medical assistance shall include surgical benefits for certain surgical procedures which meet standards for surgical intervention, as established by the state commissioner of health on the basis of medically indicated risk factors, and medically necessary surgery where delay in surgical intervention would substantially increase the medical risk associated with such surgical intervention.

   (c) Medical assistance shall include surgical benefits for other deferrable surgical procedures specified by the state commissioner of health, based on the likelihood that deferral of such procedures for six months or more may jeopardize life or essential function, or cause severe pain; provided, however, such deferrable surgical procedures shall be included in the case of in-patient surgery only when a second written opinion is obtained from a physician, or as otherwise prescribed, in accordance with regulations established by the state commissioner of health, that such surgery should not be deferred.

   · · · · ·

   (e) Medical assistance shall not include any in-patient surgical procedures or any care, services or supplies related to such surgery other than those authorized by this subdivision.

2. The State's action was also motivated in no small part by fiscal necessity. The legislative declaration included in the 1976 enactment stated that "the state and local governments are facing emergency fiscal crises of staggering proportions, and cannot continue to support the scope and level of assistance, care and services the cost of which has sharply escalated in recent years." 1976 N.Y. Laws, ch. 76, § 1.

theirs under the Social Security laws. Plaintiff doctors asserted that they were prevented from furnishing proper medical services. The Medical Society made the same assertion on behalf of its twenty-eight thousand members.

Appellants' first counter to these arguments was that the District Court was without jurisdiction to hear them. The District Court rejected this contention, basing its decision on the possible invasion of the lay plaintiffs' right of privacy resulting from the statutory requirement of a medical opinion from a second doctor. *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), which reversed *Roe v. Ingraham,* 403 F.Supp. 931 (S.D.N.Y.1975), the case relied upon by the District Court, eliminates this 28 U.S.C. § 1343 basis for jurisdiction. However, because the complaint alleges that the amount in controversy herein exceeds ten thousand dollars and it does not "appear to a legal certainty" that this is not so, *Weinberger v. Wiesenfeld,* 420 U.S. 636, 642 n.10, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), we are not prepared to say that jurisdiction does not exist under 28 U.S.C. § 1331. *See Moore v. Betit,* 511 F.2d 1004 (2d Cir. 1975); *Stanton v. Bond,* 504 F.2d 1246, 1251 n.25 (7th Cir. 1974). The District Court, on remand, should make this determination. *See Opelika Nursing Home, Inc. v. Richardson,* 448 F.2d 658, 666–67 (5th Cir. 1971).

In doing so, the District Court will of course consider whether the claim of the plaintiff Doe has become moot as a result of surgery performed since the action was commenced. The District Court should also determine whether, as appellants contend, the plaintiff Ortega has no justiciable claim, because the New York statutes do not, in fact, deprive him of the surgical procedures to which he claims to be entitled but for which he has sought no state aid. Finally, the District Court will have an opportunity to fully develop a record on the issue of whether the Medical Society, a not for profit corporation, meets the requirements for standing laid down in *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Appellants argue that the close confidential relationship between physician and patient which existed in *Singleton* is lacking herein and that the statistical evidence of excessive surgery which it has offered indicates that the Society is not a proper proponent of the rights of Medicaid recipients, who are subjected to surgery at a much higher rate than the public in general. Although we express no opinion as to the merits of this argument, we are satisfied that it mandates a more complete development of the facts than was made on the motion below.

■ Despite the fact that the District Judge may have been correct in assuming jurisdiction, he nonetheless erred when he granted plaintiffs' motion for interim injunctive relief. This is an extraordinary and drastic remedy which should not be routinely granted. *Pride v. Community School Board,* 482 F.2d 257, 264 (2d Cir. 1973); *Dopp v. Franklin National Bank,* 461 F.2d 873, 878 (2d Cir. 1972). Moreover, where the grant of interim relief may adversely affect the public interest in a manner which cannot be compensated for by an injunction bond, plaintiffs undertake an even greater burden of persuasion. *See Yakus v. United States,* 321 U.S. 414, 440–41, 64 S.Ct. 660, 88 L.Ed. 834 (1944); *New York Pathological and X-ray Laboratories, Inc. v. INS,* 523 F.2d 79, 81 (2d Cir. 1975). Certainly it is not too much to ask that plaintiffs who seek such interim relief establish a probability of success on the merits. *See Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973); *Sierra Club v. Hickel,* 433 F.2d 24, 33 (9th Cir. 1970), *aff'd on other grounds sub nom. Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

■ We are not satisfied that plaintiffs have made such a showing in this case. The State of New York is required to safeguard against unnecessary utilization of medical care and services and to assure that medical payments are not in excess of reasonable charges consistent with quality of care, 42 U.S.C. § 1396a(a)(30). It is permitted to place appropriate limits on medical

services "based on such criteria as medical necessity. . . ." 45 C.F.R. § 249.-10(a)(5)(i). Appellants argue that this is exactly what the State was attempting to do in this case, and it is not clear at this point that this argument is without substance. A more complete development of the facts through a trial on the merits, during which the views of HEW may be fully explored by the court, *see Rosado v. Wyman,* 397 U.S. 397, 406–07, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) will best protect the public interest.[3] *See Sampson v. Murray,* 415 U.S. 61, 84 n.53, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). Expediting of the trial by the District Judge will permit an early resolution of the issues.

Reversed and remanded for further proceedings in accordance with this opinion.

---

**3.** Although the record contains some letters to state authorities from HEW regional officials which comment on the proposed legislative changes, it is not clear whether the official position of HEW on the legislation as enacted will support plaintiffs' claims herein. *See, e. g.,* the following excerpt from the February 27, 1976 letter of HEW's Acting Regional Commissioner of Social and Rehabilitation Service:

The elimination of elective or deferrable surgery in all cases unless two doctors certify that a wait of six months or more will jeopardize life or essential function appears sound and we have no objection that would prohibit its implementation. Significantly, the Congressional Sub-committee on Oversight and Investigations, Committee on Interstate and Foreign Commerce, recently released a study on unnecessary surgery. That report contended that 2.38 million surgical procedures were unnecessarily performed in 1974 at a cost to the American public of $3.92 billion.