MEADOW VALLEY CONTRACTORS, INC.; and Walter Construction (USA), Inc., formerly known as Walter & SCI Construction, Plaintiffs,

v.

Terry JOHNSON, individually and in his official capacity as Labor Commissioner of the State of Nevada; Gail Maxwell, individually and in her official capacity as former Acting Labor Commissioner of the State Nevada and current Chief Investigator for the Labor Commissioner of the State of Nevada; and Thomas E. Stephens, individually and in his official capacity as the Director of the Department of Transportation of the State of Nevada, Defendants.

No. CV–S–00–0045PMPRJJ.

United States District Court, D. Nevada.

March 20, 2000.

**1182**

Gregory E. Smith, Smith & Kotchka, Las Vegas, NV, for plaintiffs.

Leslie A. Nielsen, Asst. Chief Deputy Atty Gen., Dianna Hegeduis, Deputy Atty Gen., Las Vegas, NV, for defendants.

### ORDER

PRO, District Judge.

Presently before this Court is Defendants Terry Johnson's and Gail Maxwell's Motion to Dismiss (# 11) filed on January 31, 2000. Plaintiffs Meadow Valley Contractors, Inc. and Walter Construction (USA), Inc. filed an Opposition (# 14) on February 9, 2000. Defendants filed a Reply (# 16) and an Affidavit in Support of Motion to Dismiss (# 17) on February 14, 2000.

## I. BACKGROUND

This is a dispute arising out of the interpretation and constitutionality of provisions of Nevada's prevailing wage laws. The Nevada Legislature has created a regulatory scheme governing the payment of wages to workmen employed in state public works projects. Under Nev.Rev.Stat. § 338.040, all "[w]orkmen employed by contractors or subcontractors or by public bodies at the site of the work and necessary in the execution of any contract for public works are deemed to be employed on public works." Employers of such workers are subject to certain prevailing wage requirements. Section 338.020 states, in pertinent part, that:

1. Every contract to which a public body of this state is a party, requiring the employment of skilled mechanics, skilled workmen, semiskilled mechanics, semiskilled workmen or unskilled labor in the performance of public work, must contain in express terms the hourly and daily rate of wages to be paid each of the classes of mechanics and workmen. The hourly and daily rate of wages must:

    (a) Not be less than the rate of such wages then prevailing in the county in which the public work is located, which prevailing rate of wages must have been determined in the manner provided in NRS 338.030; and

    \*   \*   \*   \*   \*   \*

3. The prevailing wage so paid to each class of mechanics or workmen must be in accordance with the jurisdictional classes recognized in the locality where the work is performed.

Nev.Rev.Stat. § 338.020(1), (3).

Co–Plaintiff Walter Construction, Ltd. ("Walter Construction") is a construction company doing business in the State of Nevada as a general contractor. Walter Construction entered into an agreement with Co–Plaintiff Meadow Valley Contractors, Inc. ("Meadow Valley") for the manufacture and installation of precast bridge segments for the Interstate 15/U.S. Highway 95 Interchange (commonly referred to as the "Spaghetti Bowl"), a large public works project located in Las Vegas, Nevada. The precast bridge segments were constructed in a production facility located approximately 11 to 12 miles away from the Spaghetti Bowl.

On or about December 10, 1999, Defendant Gail Maxwell, the then Acting Labor Commissioner of the State of Nevada, allegedly requested that the Nevada Department of Transportation withhold approximately $249,000 from the final payment of Meadow Valley for its involvement in the Spaghetti Bowl project. This amount allegedly represents the difference between the lawfully-required prevailing wage and the wages actually paid by Walter Construction.

On January 7, 2000, Meadow Valley and Walter Construction (hereinafter referred to as the "Plaintiffs") sued Terry Johnson (the current Labor Commissioner of the State of Nevada), Gail Maxwell, and Thomas E. Stephens (the Director of the Neva-

da Department of Transportation) in both their individual and official capacities. Stephens was dismissed as a party from this suit on January 24, 2000. (Notice of Dismissal (# 4)). Johnson and Maxwell (hereinafter referred to as the "Defendants") remain. The Complaint (# 1) asserts that the Defendants' withholding of public works funds violated Plaintiffs' procedural and substantive due process, in contradiction of the civil rights provisions of 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiffs seek, in pertinent part, (1) injunctive relief "prohibiting Johnson, Maxwell, the Labor Commissioner, Stephens and/or NDOT [the Nevada Department of Transportation] from enforcing or attempting to apply NRS 338 to Walter [Construction]'s work at the ... pre-cast yard" and (2) "a declaration that the work performed by Walter [Construction] at the ... pre-cast yard for the Spaghetti Bowl project is not subject to the prevailing wage rates of NRS 338." (Compl.¶ 49(1)–(3)).

On January 13, 2000, this Court denied Plaintiffs' Ex Parte Motion for Temporary Restraining Order. (Order (# 3)). On February 23, 2000, this Court denied Plaintiffs' Motion for Preliminary Injunction after hearing oral argument. (Order (# 20)). Defendants, by way of their Motion to Dismiss, now seek dismissal of all claims asserted against them.

## II. MOTION TO DISMISS STANDARD

The issue presented by a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether she may offer evidence in support of her claims. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997). Thus, a district court must restrict its consideration to those matters presented within the pleadings and presume the veracity of all factual allegations made therein. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). Matters that lie within a party's pleadings include: (1) documents physically attached to the complaint, *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987); (2) documents of undisputed authenticity that are merely alleged or referenced within the complaint, *see Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994); and (3) public records and other judicially noticeable evidence, *see Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

## III. DISCUSSION

Plaintiffs' claims for both injunctive and declaratory relief are closely intertwined. The extent of Plaintiffs' rights and duties under Nevada's prevailing wage laws will depend in large part upon the interpretation of certain provisions within Chapter 338 of the Nevada Revised Statutes. Before adjudication of these issues, however, Defendants contend that dismissal of the entire action from federal court is proper on the grounds of (A) immunity, (B) Younger abstention doctrine and (C) general justiciability grounds.

### A. Defendants' Immunity From Suit

Defendants assert that the Eleventh Amendment and the absolute immunity doctrine shield them from liability in suit. Plaintiffs, however, correctly point out that the posture of this action precludes their usage.

■ For purposes of the Eleventh Amendment, a suit against an official in his or her official capacity is a suit against that official's office. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Eaglesmith v. Ward*, 73 F.3d 857, 860 (9th Cir. 1995). States, however, are not considered to be "persons" for purposes of 42 U.S.C. § 1983 and are therefore immune from suit. *See DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir.1992). Nevertheless, an exception to this rule of immunity applies to actions for injunctive relief, *see Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct.

441, 52 L.Ed. 714 (1908), such as the one before this Court. (Compl.¶ 49.) Accordingly, this Court will deny Defendants' requests for dismissal based upon Eleventh Amendment grounds.

■ Identical reasons undercut Defendants' reliance upon absolute immunity doctrine. In certain instances, state executive branch officials are entitled to absolute immunity for acts of a quasi-judicial or quasi-prosecutorial nature. *See Butz v. Economou,* 438 U.S. 478, 512–13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Meyers v. Contra Costa County Dep't of Social Servs.,* 812 F.2d 1154, 1157 (9th Cir.1987). Like Eleventh Amendment immunity, however, absolute immunity applies only to suits for damages and will not preclude a suit for declaratory or injunctive relief. *See Fry v. Melaragno,* 939 F.2d 832, 839 (9th Cir.1991).

### B. Propriety of Younger Abstention Doctrine

■ Defendants, however, rightly contend that this Court should abstain from adjudication of this case under *Younger* abstention doctrine. Under this non-discretionary doctrine, *see Fresh Int'l v. Agricultural Labor Relations Bd.,* 805 F.2d 1353, 1356 (9th Cir.1986), federal courts must refrain from enjoining state administrative proceedings that are judicial in nature, *see The San Remo Hotel v. City and County of San Francisco,* 145 F.3d 1095, 1103 (9th Cir.1998). Absent extraordinary circumstances, *Younger* abstention is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff with an adequate opportunity to litigate his or her federal claims. *See Hirsh v. Justices of the Supreme Court,* 67 F.3d 708, 712 (9th Cir.1995). This case fits comfortably within these three prongs.

■ First, there currently exists an ongoing state adjudicatory administrative proceeding worthy of deference. Contrary to Plaintiffs' assertions, propriety of *Younger* abstention is determined not by a comparison of the starting dates of the federal and state proceedings, but rather whether state proceedings have been initiated before the performance of any "proceedings of substance on the merits" in the federal action. *See Polykoff v. Collins,* 816 F.2d 1326, 1332 (9th Cir.1987) (citations and quotation omitted). Here, the Nevada Office of the Labor Commissioner officially commenced a state action by filing an administrative complaint against Walter Construction on February 1, 2000. (Maxwell Aff.Ex. A.)[1] Pursuant to Nev.Rev.Stat. § 338.015, hearings before the Labor Commission to discuss the allegations therein were scheduled to be held between March 20 and March 23, 2000. (Maxwell Aff.Ex. B.) In comparison, a federal action for prospective relief advances beyond its "embryonic stage" only upon the conduct of extensive hearings for a motion for preliminary injunction or the grant of such a motion. *See Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 238, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). This Court held its preliminary injunction hearing on February 16, 2000, more than two weeks after the commencement of the state action. Accordingly, this Court finds the state proceeding to be ongoing or pending in nature.[2]

---

1. The Administrative Complaint (Maxwell Aff. Ex. A) and the accompanying Notice of Hearing on Administrative Complaint (Maxwell Aff.Ex. B) were not attached or referenced within Plaintiffs' Complaint (# 1) filed before this Court. Nevertheless, this Court may refer to public records and other judicially noticeable documents in the context of a motion to dismiss. *See Barron,* 13 F.3d at 1377. Accordingly, this Court will hereby take judicial notice of the documents filed in conjunction with this administrative proceeding. *See*

*Dollinger v. State Ins. Fund,* 44 F.Supp.2d 467, 472 (N.D.N.Y.1999).

2. The Court is aware that Plaintiffs' Ex Parte Motion for Temporary Restraining Order (# 2) was filed on January 13, 2000, and denied by this Court on that very same day. (Order (# 3)). A denial of a request for temporary order, however, is not a proceeding of substance on the merits for purposes of *Younger.* *See Fresh Int'l,* 805 F.2d at 1358 n. 5.

■ Second, state control of the distribution of public works funding and the maintenance of a prevailing wage for workers constructing public infrastructure certainly seem to be matters of vital importance to Nevada. While no court has directly classified such concerns for purposes of *Younger,* issues of similar consequence have justified abstention. *See, e.g., Trainor v. Hernandez,* 431 U.S. 434, 444–49, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (enforcement of state welfare program); *Getty Petroleum Corp. v. Harshbarger,* 807 F.Supp. 855, 858 (D.Mass.1992) (economic protection of franchised gasoline operators); *H.P. Hood, Inc. v. Commissioner of Agric., Food, and Rural Resources,* 764 F.Supp. 662, 670 (D.Me.1991) (pricing and health safety regulation of state dairy industry).

■ Third, the state proceedings will provide Plaintiffs with the opportunity to raise their federal concerns. For purposes of *Younger,* it is enough that the federal constitutional claims "may be raised in state-court judicial review of the administrative proceeding." *Ohio Civil Rights Com'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 629, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (citation omitted). Here, Plaintiffs may seek state judicial review of any decision by the Labor Commissioner, *see* Nev.Rev.Stat. §§ 233B.130(1), 607.215(3), which allegedly causes constitutional injury, *see* Nev.Rev. Stat. § 233B.135(3).

■ The arguments raised in opposition by Plaintiffs fail to prevent the application of *Younger* abstention doctrine. It is true that, as Plaintiffs contend, *Younger* abstention is appropriate only when an injunction is sought against the allegedly unconstitutional state judicial proceeding, as opposed to the allegedly unconstitutional state act. *See Jonathan Club v. City of Los Angeles,* 680 F.Supp. 1405, 1410 (C.D.Cal.1988) (refusing abstention where injunction was sought against enforcement of ordinance rather than city's state-court proceeding). Yet reference to Plaintiffs' prayer for relief reveals a broadly-worded request that would engulf the extant administrative action before the Labor Commissioner. (Compl.¶ 49(2)). Moreover, even construing Plaintiffs' allegations in their most favorable light, this Court does not find the existence of the type of "irreparable harm" meriting federal consideration of this case. *See Grand Metropolitan PLC v. Pillsbury Co.,* 702 F.Supp. 236, 239 (D.Ariz.1988). This Court therefore finds dismissal of Plaintiffs' Complaint (# 1) to be appropriate. *See Delta Dental Plan of California, Inc. v. Mendoza,* 139 F.3d 1289, 1294 (9th Cir.1998) (requiring dismissal, not stay, of federal claims abstained from under *Younger* ).

## C. Other Justiciability Issues

Even in the absence of *Younger* abstention doctrine, this Court would still find dismissal to be proper under other general precepts of justiciability. In their § 1983 claim, Plaintiffs have asserted that Defendants' conduct violated both the procedural and substantive due process provisions of the Fourteenth Amendment. (Compl.¶¶ 42–43.) Without deciding these issues, this Court further notes that exhaustion and *Pullman* abstention concerns would preclude the consideration of both of these claims.

### 1. Exhaustion of State Procedural Due Process Remedies

■ The sine qua non of any § 1983 action is the deprivation of a federal right. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "When state remedies are adequate to protect an individual's procedural due process rights, a section 1983 action alleging a violation of those rights will not stand." *Brogan v. San Mateo County,* 901 F.2d 762, 764 (9th Cir.1990) (citing *Wood v. Ostrander,* 879 F.2d 583, 588 (9th Cir. 1989)). When construing a similar state prevailing wage statute, the Ninth Circuit Court of Appeals held that the state's interest in ensuring prevailing wages was sufficient to permit the withholding of money from public works contractors with-

out a pre-deprivation hearing, as long as the statutory scheme provided for a "reasonably prompt" post-deprivation hearing. *See G & G Fire Sprinklers, Inc. v. Bradshaw,* 156 F.3d 893, 903–04 (9th Cir.1998), judgment vacated and remanded, —— U.S. ——, 119 S.Ct. 1450, 143 L.Ed.2d 538 (1999), reinstated, 204 F.3d 941, 943–44 (9th Cir.2000) (construing California prevailing wage law).

■ Under Nevada's prevailing wage laws, the Labor Commissioner may order a withholding of public funds upon reasonable belief that a public works employee may have a valid and enforceable claim for the payment of prevailing wages. *See* Nev.Rev.Stat. § 338.160(5). The Nevada Labor Commissioner's Practice Rules further require that:

> If, from the complaint [of failure to pay a prevailing wage] or from other official records of the commissioner, it appears that the charges may be well founded, the commissioner will send written notice to the person charged at least 14 days before the date fixed for the hearing. The notice must itemize the charges and set forth the date of the hearing.

Nev.Admin.Code ch. 607, § 607.200(3). Together, these provisions satisfy the notice and fair hearing requirements of the Due Process Clause. *See Universal Elec., Inc. v. State ex rel. Office of Labor Com'r,* 109 Nev. 127, 847 P.2d 1372, 1373 (1993). Plaintiffs, at a minimum, must request such a hearing before asserting a deprivation of procedural due process rights.

### 2. Pullman Abstention From Substantive Due Process Claim

■ Similarly inappropriate at this time would be an examination of Plaintiffs' allegations that Johnson's and Maxwell's actions were both "arbitrary and capricious" and "without legal authority" (i.e., violated substantive due process). (Compl.¶ 42.) Under the *Pullman* abstention doctrine, federal court abstention is required when: (1) the complaint involves a sensitive area of social policy best left to the states; (2) state court clarification of

state law might obviate the need for constitutional adjudication by the federal court; and (3) there is uncertainty as to the meaning of the potentially determinative state law at issue. *See Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Burdick v. Takushi,* 846 F.2d 587, 588 (9th Cir. 1988).

■ All these factors are satisfied here. The regulation of construction wages paid in state public works projects seems to be a matter of equal magnitude to other areas properly abstained from under *Pullman. See, e.g., Cedar Shake and Shingle Bureau v. City of Los Angeles,* 997 F.2d 620, 622 (9th Cir.1993) (building fire safety codes); *Mireles v. Crosby County,* 724 F.2d 431, 433 (5th Cir.1984) (state welfare benefits); *International Brotherhood of Elec. Workers v. Public Serv. Comm'n,* 614 F.2d 206, 212 (9th Cir. 1980) (public utilities rates and energy resource conservation). Moreover, it is unclear whether laborers at a work site physically removed from a public works project but who fabricate materials solely for use at such a project are subject to Nev.Rev. Stat. § 338.040. State court clarification of the terms "site of the work" and "necessary in the execution of [a] contract for public works" might obviate the need of any substantive due process analysis (i.e., find Johnson's and Maxwell's acts to be authorized by statute). Accordingly, deference to state proceedings under *Pullman* abstention grounds would be appropriate here as well.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants Terry Johnson's and Gail Maxwell's Motion to Dismiss (# 11) is GRANTED and that all claims asserted against Defendants Terry Johnson and Gail Maxwell, in both their official and individual capacities, are DISMISSED.