DIAMOND "D" CONSTRUCTION CORP., Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF LABOR ("DOL") BUREAU OF PUBLIC WORKS; James J. McGowan, Commissioner of Labor of the State of New York; Department of Audit and Control, State of New York; Michael O'Connell, Department of Audit and Control, State of New York; County of Erie; Nancy Naples, Erie County Comptroller; Ronald Kinn, Individually and in his Capacity as Public Work Wage Investigator Employed by the DOL; Dale Stanley, Individually and in his Capacity as an Employee of the DOL; Brian Robison, Individually and in his Capacity as Senior Public Wage Investigator Employed by the DOL; Defendants.

No. 00–CV–335C.

United States District Court, W.D. New York.

Aug. 17, 2000.

---

from or substantially limited in the life activity of work.

Killeen & Killeen LLP (Henry W. Killeen, III, of counsel), Orchard Park, NY, Napier, Fitzgerald & Kirby (Brian P. Fitzgerald, of counsel), Buffalo, NY, for plaintiff.

Eliot Spitzer, Attorney General of State of New York (Pico Paul Ben–Amotz, Assistant Attorney General, of counsel), New York City, for defendant New York State Dept. of Labor.

Frederick A. Wolf, Erie County Attorney (George Michael Zimmermann, Assistant County Attorney, of counsel), Buffalo, NY, for defendant Erie County.

## DECISION and ORDER

CURTIN, District Judge.

### INTRODUCTION

By an order dated June 29, 2000 ("prior order"), the court denied plaintiff Diamond D's motion for a preliminary injunction. Item 34; *Diamond "D" Const. Corp. v. New York State Dept. of Labor*, 105 F.Supp.2d 167 (W.D.N.Y. 2000) ("*Diamond "D" I*"). On July 14, 2000, Diamond D timely filed the present motion for reconsideration pursuant to Rule 59(e) of the Fed.R.Civ.P. Item 39; *see also* Item 40 (Memorandum in Support). Subsequently, the State defendants have had an opportunity to file opposing papers. Items 42 and 43. On August 11, 2000, the court heard oral argument on the matter. For the reasons stated herein, the court grants

Diamond D's motion to reconsider, modifies the order of June 29 in certain respects, and directs the parties to prepare for evidentiary hearings.

## BACKGROUND

In this opinion and order, the court assumes familiarity with much of the relevant background and facts as set forth in the prior order. *See Diamond "D" I*, 105 F.Supp.2d at 170–74. However, at this time, the court also takes note of recent developments at the State administrative level.

When the court met with the parties in early June 2000, the State indicated that the DOL had scheduled hearings for three days in mid-July 2000. Then, during argument before this court in August 2000, the court learned that DOL Hearing Officer Troue did indeed hold three days of hearings on July 18, 19, and 20, 2000. Despite initial signs of promise, those hearings resulted in little progress. It appears that Diamond D asked Mr. Troue to mediate settlement negotiations on the basis of certain records. These negotiations consumed all three days of hearings. While it appeared that the negotiations were going to result in the release of over $500,000 of the withheld funds, that agreement fell through at the last minute. As a result of the failed settlement negotiations, neither party has yet had an opportunity to develop a record before Hearing Officer Troue. The State hearings were adjourned on July 20, 2000, and were scheduled to resume on August 28, 2000.

Although the court does not reach any conclusions on this issue now, the court does find that the extent of progress at the DOL hearings will be relevant to this court's inquiry into whether the DOL has violated Diamond D's constitutional right to procedural and substantive due process.

## DISCUSSION

### I. Eleventh Amendment Immunity

This court has recently recognized the governing principles of Eleventh Amendment jurisprudence:

"[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." In addition, the Eleventh Amendment bars a plaintiff from recovering *retroactive* damages against a State or a State official in his or her official capacity.

. . . .

[However, t]he Supreme Court has made clear that the "Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." Furthermore, the Eleventh Amendment does not necessarily bar awards of *prospective* relief even though such relief will impact on the State treasury.

*Diamond "D" I*, 105 F.Supp.2d at 179, 181 (citations omitted) (emphasis added). This dichotomy between "retroactive" relief—which the Eleventh Amendment bars—and "prospective" relief—which it does not—represents a balance between federal and State interests. *See New York City Health & Hospitals Corp. v. Perales*, 50 F.3d 129, 134–35 (2d Cir.1995) (citation omitted) (hereinafter *"New York City Health & Hospitals"*).

Notwithstanding the apparent clarity of the foregoing principles, application of Eleventh Amendment immunity can prove quite challenging in light of a particular case's unique facts. The principal difficulty has its roots in this "retroactive-prospective" inquiry. One commentator has observed that the facts of individual cases often do "not correspond tidily to the[ ] propositions" regarding retroactive and prospective relief. William A. Fletcher, "A Historical Interpretation of the Eleventh Amendment: A Narrow Construction of an Affirmative Grant of Jurisdiction Rather than a Prohibition Against Jurisdiction," 35 *Stan.L.Rev.* 1033, 1122 (1983). Judge Cardamone of the Second Circuit has similarly reflected:

The contrast between prospective relief, permitted under the Eleventh Amendment, and retroactive relief, barred by that Amendment, is far from that between day and night. It is more like examining a subject in that half-light called the gloaming, where to identify it accurately one needs to have the instincts of Argos, Odysseus' dog, who recognized his master dressed as a beggar upon his return home after 20 years' absence.

*New York City Health & Hospitals Corp.,* 50 F.3d 129, 130 (2d Cir.1995).

Now, upon further consideration of the record in this case and upon further review of cases like *New York City Health & Hospitals* and *Surrogates and Supreme Court Reporters v. State of New York,* 940 F.2d 766 (2d Cir.1991) ("*Surrogates I* "), this court finds that Diamond D is, in fact, entitled to assert a claim for prospective relief against the State defendants and that the Eleventh Amendment does not act as a bar to such relief. The court further finds that such a grant of prospective relief would have the necessary and ancillary effect of causing the withheld funds to be released and that such an effect on the State treasury would also not be barred by the Eleventh Amendment.

In the prior order, the court likened the present case to *Tekkno Laboratories, Inc. v. Perales,* 933 F.2d 1093 (2d Cir.1991); and *Yorktown Medical Laboratory, Inc. v. Perales,* 948 F.2d 84, 87–88 (2d Cir.1991) (following *Tekkno* ). *See Diamond "D" I,* 105 F.Supp.2d at 179, 181. In both *Tekkno* and *Yorktown,* the plaintiffs were medical laboratories that sued the State Department of Social Services for the release of money that was being withheld from them pending an audit of the plaintiff laboratories' billing practices. In Diamond "D" I, this court reasoned that the "present case is substantially similar to *Tekkno* " and found that under *Tekkno* "plaintiff's request is likely barred by the Eleventh Amendment." *Diamond "D" I,* 105 F.Supp.2d at 180 (citation omitted).

By its motion to reconsider, Diamond D continues to insist that *Tekkno* and *Yorktown* do not control, because in those cases the State agency was essentially accusing the laboratories of fraudulently billing for services they never provided, whereas in this case there are no such claims from the State. That is, Diamond D contends that there is no dispute that it has satisfied its obligations to the State Department of Transportation by completing the work called for in the relevant contracts. *See* Item 40, pp. 18–19. Based on this factual distinction, Diamond D maintains that *Tekkno* and *Yorktown* are inapposite.

For substantially the same reasons discussed in the prior order of June 29, the court rejects the way in which Diamond D seeks to distinguish *Tekkno* and *Yorktown.* Again, the court finds that those two cases substantially resemble the present one to the extent that they all involve a State agency withholding money from a contractor on the basis of allegations that the contractor is not actually owed the entire amount. In *Tekkno* and *Yorktown,* the State agency alleged that the work had not been done, or that the work was being misrepresented and over-billed. Here, the State agency alleges that Diamond D has misreported the number of workers on its jobs and has failed to pay many workers the prevailing wage. In either situation, there is a State agency withholding money based on the belief that the contractor is not entitled to all of the money being sought.

Again, Diamond D has continued to argue that this case differs from *Tekkno* and *Yorktown* because here it is undisputed that Diamond D has performed the work required by the contracts and, but for the prevailing wage laws, Diamond D would be owed the withheld funds. *See, e.g.,* Item 22, pp. 4–5 (citing to O'Connell Affidavit [Item 12, ¶¶ 4–5] ). The court has previously held that, by this argument, Diamond D vainly attempts to draw a distinction "between monetary damages and money in which plaintiff has a property

interest—a distinction irrelevant to Eleventh Amendment analysis." *Yorktown,* 948 F.2d at 87–88. Indeed, by framing its motion this way, Diamond D essentially seeks the release of "seized" property. The Supreme Court has consistently held that the Eleventh Amendment bars such claims for "equitable restitution," no matter how a plaintiff might try to re-characterize them. *See, e.g., Ford Motor Co. v. Department of Treasury of State of Indiana,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Papasan v. Allain,* 478 U.S. 265, 280, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

Upon reconsidering the matter, however, the court *does* find that *Tekkno* and *Yorktown* are distinguishable from the present case on other grounds. In *Tekkno,* the plaintiff laboratory sought an order "preliminarily enjoining the State from delaying payment of Medicaid claims submitted to it" by plaintiff Tekkno. 933 F.2d at 1094. The *Tekkno* trial court then ruled in error when it "explicitly ordered the State to pay moneys out of its treasury in compensation of the claims submitted by Tekkno 'prior to the date of this order.'" 933 F.2d at 1098. Similarly, in *Yorktown,* the plaintiff laboratory sought the "return of property" and demanded an order enjoining the State from continuing to withhold the funds. 948 F.2d at 87–88.

The present case differs from *Tekkno* and *Yorktown* in that the court has agreed to construe Diamond D's motion as a motion *to enjoin the DOL's enforcement actions against it. Diamond "D" I,* 105 F.Supp.2d at 181–82. Therefore, unlike the plaintiffs in *Tekkno* and *Yorktown,* Diamond D may ultimately secure prospective injunctive relief—*i.e.,* an order

directing the DOL to cease its enforcement activities.[1] Thus, it is the nature of the relief being sought—not the rationale for withholding the funds—that distinguishes this case from *Tekkno* and *Yorktown.*

In its previous order, the court also declined to follow the authority of *Association of Surrogates and Supreme Court Reporters v. State of New York,* 940 F.2d 766 (2d Cir.1991) ("*Surrogates I*"). *See Diamond "D" I,* 105 F.Supp.2d at 182–83 (quoting *Surrogates I*).

In *Surrogates I,* the court of appeals upheld the order enjoining enforcement of the lag-payroll statute. Further, the court of appeals found that the Eleventh Amendment did not bar the plaintiff employees' requested relief, "[s]ince the eleventh amendment does not bar suits against state officers to enjoin violations of federal law, and any monies that will be restored to the plaintiffs from the state treasury are ancillary to the prospective relief which we order...." 940 F.2d at 774.

In this court's prior order, the court reasoned:

> The court declines to rely on [*Surrogates I*] because the facts at issue in th[at] case[ ] are so dissimilar from those in the present case. [*Surrogates I*] dealt with the State's attempt to legislate away its contractual obligations and the court's decision to enjoin the State's lag-payroll statute by virtue of the contracts clause. In [*Surrogates I*], the court of appeals concluded that payment of the unpaid wages would be ancillary to enjoining the lag-payroll statute prospectively. As a result of the

---

**1.** Among other things, such an order would have the necessary effect of voiding the Notices of Withholding currently in place. Although the Eleventh Amendment bars plaintiffs from seeking retroactive relief from the State's "past wrongs," *see, e.g., Edelman v. Jordan,* 415 U.S. 651, 664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), it does not similarly bar prospective relief from "ongoing" violations of a plaintiff's constitutional rights, *see e.g., id.*

at 667–68, 94 S.Ct. 1347. In this case, the Notices of Withholding are of the latter variety, since they are still in force and will continue to be in force until the DOL resolves the matter by administrative order. *Cf. Association of Surrogates and Supreme Court Reporters v. State of New York,* 940 F.2d 766 (2d Cir.1991) (finding that withheld pay represented ongoing violation).

unique factual and legal nature of those cases, the court finds that they do not inform the present analysis.

*Diamond "D" I,* 105 F.Supp.2d at 183–83. Further, the court declined to follow *Surrogates I* because a release of the withheld funds in this case appeared as though it would be "central" rather than "ancillary" to any prospective remedy, *id.* at 181–82.

Given an opportunity to confront these issues again, the court now finds that *Surrogates I* should control. Both *Surrogates I* and this case involve constitutional challenges to the validity of State laws. In *Surrogates I,* the basis of the constitutional challenge was the contracts clause, and the plaintiffs' theory was that the lag-payroll statute was unconstitutional on its face. In this case, the basis of the constitutional challenge is the due process clause, and the plaintiff's theory is that the prevailing wage laws are unconstitutional as they are being enforced.

Moreover, both cases involve plaintiffs that ultimately seek the release of funds that are being continually withheld by the State. In *Surrogates I,* the plaintiff class ultimately sought release of two weeks' withheld pay. In this case, Diamond D ultimately seeks release of withheld payments for apparently fulfilled public work contracts.

2. In its research, the court was able to find one case apparently on all fours with the present one: *Meadow Valley Contractors, Inc. v. Johnson,* 89 F.Supp.2d 1180 (D.Nev.2000). That decision supports the conclusion the court reaches here. In *Meadow Valley,* co-plaintiff Walter Construction commenced a section 1983 action challenging the way in which the Nevada State Department of Labor subjected it to the prevailing wage laws. More specifically, Walter Construction sought to effect the release of funds being withheld by the Nevada State Department of Labor. In framing the action as one for injunctive relief, Walter Construction asked that the court enjoin the Nevada Labor Commissioner from enforcing the prevailing wage laws against it. *Id.* at 1182–83. More specifically, the plaintiff in *Meadow Valley* requested an order that would

■ After considering the matter further, the court finds *Surrogates I* to be substantially indistinguishable from the present one. Under *Surrogates I,* the Eleventh Amendment does not bar Diamond D's claim against the State defendants to the extent that Diamond D seeks prospective, injunctive relief from the DOL's investigation and enforcement action. In much the same way that a release of withheld funds was deemed ancillary to the injunction against the lag-payroll statute in *Surrogates I,* so too would a release of the withheld funds in this case be ancillary to an injunction against the DOL's Diamond–D–related investigation and enforcement actions.[2]

However, *Surrogates I* is not the final word on this issue of Eleventh Amendment immunity. In the course of revisiting the issues raised by this motion, the court has reviewed the Supreme Court's decision in *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). In that case, the Court reaffirmed the *Ex Parte Young* doctrine, but also carved out a new exception to *Ex Parte Young,* adding yet another wrinkle to Eleventh Amendment jurisprudence by requiring courts to determine whether prospective relief under the *Ex Parte Young* doctrine would improperly compromise a State's sovereignty interests. Specifically, in *Coeur d'Alene,* the Court rejected the

"prohibit[ ] ... the Labor Commissioner ... and/or NDOT (the Nevada Department of Transportation) from enforcing or attempting to apply [Nevada's Prevailing Wage Laws] to Walter (Construction)'s work at the ... pre-cast yard ... for the Spaghetti Bowl [construction] project [,which] is not subject to the prevailing wage rates of [Nevada State law]."

*Id.* at 1183 (quoting Complaint). In *Meadow Valley,* Judge Pro summarily held that even though Walter Construction sought the release of withheld funds, the State defendants were not entitled to assert Eleventh Amendment immunity because the plaintiffs demanded prospective injunctive relief. *Id.* at 1183–84.

.

application of the *Ex Parte Young* doctrine to a claim brought by an Indian tribe for injunctive relief against continuing State regulation of lands to which the tribe claimed title. In their suit, the members of the Indian tribe requested injunctive relief that would bar the State's principal officers from controlling certain disputed lands and waters. 521 U.S. at 265–66, 117 S.Ct. 2028. Writing for the Court, Justice Kennedy cautioned that an interpretation of *Ex Parte Young* that would allow "federal court-action to proceed in every case where prospective declaratory and injunctive relief is sought . . . would be to adhere to an empty formalism. . . ." 521 U.S. at 270, 117 S.Ct. 2028. Thus, the Court in *Coeur d'Alene* held that federal courts should determine on a case-by-case basis whether the grant of prospective, injunctive relief would compromise a State's so-called "special" sovereignty interests. *See id.* at 279–80, 117 S.Ct. 2028.

This court cannot resolve the issues raised by the Court in *Coeur d'Alene* at this stage of the litigation, but it is an issue that must be argued and resolved before any relief is granted.

## II. *Younger* Abstention Doctrine

### A. *Diamond D's Arguments Against Application of Younger Abstention Doctrine*

#### 1. *Availability of Judicial Review*

■ Notwithstanding the court's reconsidered ruling on Eleventh Amendment immunity, the *Younger* abstention doctrine remains an obstacle for Diamond D. Again, the *Younger* abstention doctrine generally requires federal courts to refrain from enjoining State administrative proceedings where: (1) there is an ongoing administrative proceeding; (2) there is a State interest in the proceeding; and (3) the party has an opportunity for judicial review of the administrative agency's actions. *See Diamond "D" I*, 105 F.Supp.2d at 175–77 (citing *Ohio Civil Rights Com'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 626–

27, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986)). Here, the court re-affirms the substance of its *Younger* analysis set forth in the prior order of June 29 and finds that each prong of that three-part test is satisfied in this case. *Diamond "D" I*, 105 F.Supp.2d at 175–77.

In its motion, Diamond D offers a great many arguments to support the position that the *Younger* abstention doctrine does not apply. Several of these arguments need not be addressed in detail, since they are premised on Diamond D's unproven theory of the case. For example, Diamond D concedes that there is an ongoing administrative action in this case, but insists that the DOL's proceedings are a sham—instituted after the present litigation was commenced in order to invoke the protection of the *Younger* abstention doctrine. *See* Item 40, p. 7. The court rejects this variety of argument as unpersuasive.

With respect to the *Younger* abstention doctrine, however, Diamond D does proffer one substantive argument of note: that Diamond D will not have meaningful access to "judicial review" of the DOL's current administrative proceedings. On this count, Diamond D argues that the court erred by finding that Article 78 of the CPLR would provide an opportunity to secure judicial review of the DOL's determinations. *See* Item 40, p. 8. Diamond D maintains that there is no adequate judicial review available because it would "clearly . . . be futile" to raise a due process argument at an Article 78 petition that would take place *after* the DOL Hearings are over. Item 40, p. 9.

Diamond D goes on to insist that New York State courts have historically refused to punish the DOL for due process violations associated with prevailing wage investigations. *See* Item 40, pp. 8–9. Here, Diamond D complains that State courts only occasionally afford the relief of the "writ of mandamus," thereby directing the DOL to hold its hearings without further delay. Thus, Diamond D argues, there will be no opportunity to secure meaning-

ful review of its due process claim after the DOL issues its administrative order because once the DOL has made its decision, it would be moot for a State court to order that hearings be held.

■ The court finds Diamond D's argument on this point to be somewhat confusing. It is true that a writ of mandamus would be worthless to Diamond D if it were issued only after the DOL had already held its hearings and rendered its decision. Yet this argument from Diamond D misses the point, which is: *Judicial review was available because Diamond D could have gone to the State courts at any time during the pendency of the DOL's investigation and sought a writ of mandamus in order to vindicate its constitutional right to procedural due process.* The court took note of this fact during oral argument in June. Furthermore, the court has endorsed those New York cases where courts have issued writs of mandamus when the DOL had unduly delayed a prevailing wage investigation and hearing. *See Diamond "D" I,* 105 F.Supp.2d at 176–79 (citing cases). Indeed, the writ of mandamus is the only appropriate relief where a party, like Diamond D, asserts that a State agency's delays have violated its right to procedural due process.

■ In this case, the DOL has already scheduled and held a first set of hearings. Thus, the only relief available to Diamond D for a violation of its right to *procedural* due process would be an order directing the DOL to hold *all* of its hearings more promptly than is currently planned and to issue its decision on an expedited basis.

### 2. *Diamond D's Substantive Due Process Claim*

Diamond D's motion for preliminary injunction—and its motion to reconsider—can also be read as stating a claim for violation of its right to *substantive* due process. That is, Diamond D asserts that the DOL has carried out its present enforcement actions in bad faith—with the intent of punishing and harassing Diamond D regardless of whether the investigation has any merit. *See e.g., Diamond "D" I,* 105 F.Supp.2d at 176–78.

In order for a plaintiff to maintain a substantive due process claim, she must demonstrate that the government actor's actions were "arbitrary, or conscience-shocking, in a constitutional sense." [*Collins v. City of Harker Heights,* 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).] Substantive due process does not provide protection against state actions that are merely "'incorrect or ill-advised.'" *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (citation omitted). Therefore, most claims sounding in tort do not constitute substantive due process violations. Indeed, even intentional torts by government actors are not actionable as substantive due process violations unless they are "arbitrary and discriminatory" or "shock the conscience." *Interport Pilots Agency, Inc. v. Sammis,* 14 F.3d 133, 144 (2d Cir.1994). *Sundbye v. Ogunleye,* 3 F.Supp.2d 254, 261 (E.D.N.Y.1998). Based on this standard set forth in *Sundbye,* Diamond D has a substantial burden to carry in order to establish a violation of its right to *substantive* due process.

Here, the court observes that the same kind of facts that would support a claim for a violation of substantive due process might also support an exception to the *Younger* abstention doctrine. *See infra.* For reasons explained *infra,* the court finds that a more fully developed record and a preliminary fact-finding procedure are necessary to resolve the issue of whether the DOL has violated Diamond D's constitutional right to substantive due process.

### 3. *Exception to Younger Abstention Doctrine*

■ As the court has discussed *supra,* the *Younger* abstention would appear to

preclude this court from enjoining the DOL's ongoing administrative proceedings. However, the court recognizes that there is a "narrow" exception to *Younger* abstention. *See Diamond "D" I*, 105 F.Supp.2d at 176–77. That is, even where it is clear that the *Younger* doctrine should apply, a court may still enjoin the State proceeding if the evidence demonstrates that the administrative proceedings have been conducted in bad faith or with the intent to harass the affected party. *See Cullen v. Fliegner*, 18 F.3d 96, 103–04 (2d Cir.1994). "[F]ederal courts should still afford injunctive relief to a plaintiff . . . upon a showing of 'bad faith, harassment or any other exceptional circumstance that would call for equitable relief.' . . . [Further,] a refusal to abstain is . . . justified where a prosecution or proceeding has been brought . . . in bad faith or for the purpose to harass." *Id.* (citation omitted).

In the prior order, the court found that Diamond D had failed to establish entitlement to *Cullen*'s "narrow" exception to *Younger* abstention, 18 F.3d at 104, because Diamond D had not shown that the DOL had proceeded in bad faith or with the intent to harass Diamond D. *See Diamond "D" I*, 105 F.Supp.2d at 177–78.

By its motion to reconsider, Diamond D insists that the current record raises issues of fact as to whether the DOL has proceeded in bad faith. *See* Item 40, pp. 25–30. Specifically, Diamond D urges the court to reconsider certain issues of fact, such as: (1) whether defendant Kinn's bad faith is belied by the amount of withholdings he authorized after conducting an allegedly insufficient investigation into Diamond D's wage-paying practices, *see* Item 40, pp. 25–27; Item 7, ¶¶ 48, 53; (2) whether defendant Kinn's bad faith is belied by his alleged refusal to reduce the amount of money being withheld, *see* Item 40, p. 27, Item 7, ¶ 54; (3) whether defendant Kinn's bad faith is belied by his apparent decision to base the 1999 withholdings, in large

part, on alleged under-payments to Messrs. DiPizio, Gorski, and Hopkins, *see* Item 40, pp. 26–27; Item 7, ¶¶ 77–83; and (4) whether, as a general matter, the DOL has belied its bad faith by allegedly refusing to allow Diamond D to post a bond to secure release of the so-called "under-payment withholdings," *see* Item 7, ¶¶ 58–62 & Exh. M.[3]

In the prior order of June 29, the court acknowledged that there might be certain issues of fact regarding whether the DOL had proceeded properly against Diamond D and whether there were improper motives behind its current investigation and enforcement action. *See Diamond "D" I*, 105 F.Supp.2d at 176–78. Yet in its original motion papers, Diamond D relied on the attorney affirmation from Mr. Killeen and did not insist that a hearing was necessary to resolve these issues. At oral argument, the court speculated that perhaps an evidentiary hearing was in order. After considering the matter further, however, the court found that Diamond D—by its papers—had simply failed to carry the heavy burden associated with a motion for a preliminary injunction. Now, by this motion for reconsideration, Diamond D insists that the court should hold hearings in light of the fact that the record raises many issues of fact regarding whether the DOL simply sought to harass Diamond D through its current enforcement actions.

The court, then, is principally left with two issues to resolve: (1) whether Diamond D can establish a violation of its right to substantive due process, *see supra*, and (2) whether Diamond D can show that an exception should be made to the *Younger* abstention doctrine. In reviewing the record, the court finds many instances where the parties accuse one another of causing various problems that have allegedly been associated with the DOL's investigation. *See e.g., Diamond "D" I*, 105 F.Supp.2d at 172–74, 176–78 (itemizing parties' proof in support of con-

---

3. Diamond D logically relies on this same set of factual allegations in order to support its

implicit claim for violation of its right to substantive due process. *See supra.*

trary positions). To summarize this set of accusations: the DOL maintains that Diamond D has repeatedly blocked the DOL's attempts to resolve this investigation promptly through its own obstructive and confrontational conduct, while Diamond D insists that the DOL's investigation has been totally baseless from the start and represents the DOL's vindictive effort to destroy Diamond D as a viable business entity.

■ The court still finds that the present record does not support a clear and convincing finding that the DOL has proceeded in bad faith. *See Diamond "D" I,* 105 F.Supp.2d at 177–78. However, it would be better to resolve these issues by allowing the parties to develop the record more fully through evidentiary hearings. Then, the court may engage in a process of preliminary fact-finding. The court directs the parties to prepare for an evidentiary hearing in which the court will receive evidence on these unresolved—and related—issues of whether there should be an exception to the *Younger* abstention doctrine and whether the DOL has violated Diamond D's constitutional right to substantive due process.

These hearings will commence on August 22, 2000, at which time the DOL will begin by conducting a brief introductory examination of defendant Ronald Kinn. The court will then hold further hearings on August 23 and 24, 2000. If further hearings are necessary, the court will hold them during the week of September 5, 2000.

## CONCLUSION

The court grants in part and denies in part plaintiff Diamond D's motion to reconsider. Item 39. The same hearings and fact-finding inquiry will help resolve the two main remaining issues: (1) whether under *Cullen* this court should enjoin the DOL's administrative proceedings because the DOL has acted in bad faith, with an intent to harass and punish Diamond D, and (2) whether the DOL's investigation

and proceedings represent a violation of Diamond D's constitutional right to substantive due process. In order to resolve these issues with certainty, the court will hold hearings where the parties may develop a fuller record. Based on the present record and the record developed at the hearings, the court will be able to make preliminary findings of fact and will also be able to resolve Diamond D's motion for a preliminary injunction.

For the time being, the court reserves judgment on the issue of whether the DOL's current hearings schedule comports with Diamond D's constitutional right to procedural due process.

So ordered.